IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

UNITED STATES OF AMERICA
and STATE OF MISSOURI,

               Plaintiffs,

    v.

Blue Tee Corp. and Gold Fields
Mining, LLC,

               Defendant.

CIVIL ACTION NO. 08-5114-CV-SW-JCE

**RD/RA CONSENT DECREE**

# I. **Background**

A.   The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), the State of Missouri, ex rel. Jeremiah W. (Jay) Nixon (the "State") and the Missouri Department of Natural Resources ("MDNR"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.   The United States and the State in their complaint seek, inter alia: (1) reimbursement of costs incurred by EPA, the Department of Justice and the State for response actions at the Oronogo-Duenweg Mining Belt Superfund Site in Jasper County, Missouri, (the "Site") together with accrued interest; and (2) performance of studies and response work by the Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.   In accordance with the NCP and Section 121(f)(1)(F) of CERCLA 42 U.S.C. § 9621(f)(1)(F), EPA notified the State on or about February 20, 2007, of negotiations with potentially responsible parties (the "PRPs") regarding the implementation of the remedial design and remedial action ("RD/RA") for Operable Unit No.1 (as defined below) at the Site, and EPA has provided the State with an opportunity to participate in the negotiations and be a party to this Consent Decree.  The State has been participating in those negotiations and is a party to this Consent Decree.

D.   In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Department of Interior ("DOI") on or about February 20, 2007, of negotiations with the PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal and State trusteeship.

E.   Defendants Blue Tee Corp. and Gold Fields Mining, LLC ("BT/GF" or "Settling Defendants") do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, the EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on August 30, 1990, 55 Fed. Reg. 35502.

G.   In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, EPA commenced in 1991, a site-wide Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.  The EPA divided the site into five Operable Units (OUs) including OU-1, Mining and Milling Wastes Cleanup; OU-2/3, Smelter and Mine Waste Residential Yard Cleanup; OU-4, Alternate Water Supply; and OU-5, Spring River Watershed.

RD/RA Consent Decree for
Blue Tee/Gold Fields

H.     The Settling Defendants along with EPA and other PRPs completed a site-wide Remedial Investigation ("RI") Report in 1995.  The Feasibility Study ("FS") Report for OU-1 was completed in 2003.

I.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on July 19, 2004, in the Joplin Globe newspaper.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator based the selection of the response action.

J.     The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 30, 2004, on which the State has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

K.     Based on the information presently available to EPA and the MDNR, EPA and the MDNR believe that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.     Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action ("RA") selected in the ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

M.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.  Further, the Parties agree that upon entry by the Court, this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f) of CERCLA.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  Jurisdiction

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607 and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, the Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  The Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

RD/RA Consent Decree for
Blue Tee/Gold Fields

### III. **Parties Bound**

2.      This Consent Decree applies to and is binding upon the United States and the State and upon the Settling Defendants and their heirs, successors and assigns.  Any change in ownership or corporate status of the Settling Defendants including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the Settling Defendants' responsibilities under this Consent Decree.

3.      The Settling Defendants shall provide a copy of this Consent Decree to each contractor hired by them to perform the Work required by this Consent Decree and to each person representing the Settling Defendants with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  The Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  The Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

### IV. **Definitions**

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Associated Tributaries" shall mean those intermittent tributaries, including but not limited to any stream or miners ditch other than the Class P Streams as categorized by the State, that drain from or through each Parcel to the intersection of the receiving Class P Stream. The "Associated Tributaries" subject to this Consent Decree are highlighted in green on the maps attached in the SOW, Appendix B.   In addition, for purposes of this Consent Decree only, an intermittent tributary draining from or through the Jasper Mine Parcel as identified on Table 1, in the Statement of Work (as defined below) is an "Associated Tributary" for Gold Fields Mining, LLC, from the Jasper Mine Parcel to the point where that tributary reaches the presence of Source Materials located on the following real property, W ½ SW 1/4 Section 6, T27N, R33W, known as the Missouri Central Tract Parcel.  It is the intention of the Parties that issues related to those portions of Jasper Mine Parcel's intermittent tributaries that are not "Associated Tributaries" under this Consent Decree are to be resolved by separate arrangement.  Nothing in this Consent Decree is intended to prejudice the rights of any Party with respect to the portions of Jasper Mine Parcel's intermittent tributaries that are not "Associated Tributaries" for purposes of this Consent Decree.

"Affected Media" shall mean the physical attributes of Parcels and Associated Tributaries affected by releases of and from Source Material including but not limited to ground water, surface water, sediments and soils.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or State or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 103.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oronogo/Duenweg Tributary Costs" shall mean all costs incurred by EPA or the State in remediating a portion of the tributary that is not subject to this Consent Decree and drains to Center Creek located in the Oronogo/Duenweg Designated Area of the Site and draining from or through the Parcels known as Richland and Cornfield as identified on Table 1 in the Statement of Work. This definition pertains only to the lower reach of this tributary below Missouri Highway 171 as shown in blue on the Map attached to the SOW.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Control) (including, but not limited to, the cost of attorney time and any monies paid to secure access or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV (Emergency Response), and Paragraph 84 of Section XXI (Work Takeover). Future Response Costs shall begin to accrue from the Effective Date of this Consent Decree.

"Institutional Controls" shall mean non-engineered instruments, such as administrative or legal controls that are intended to help to minimize the potential for human exposure to contamination remaining at levels that do not support unlimited use and unrestricted exposure or to protect the integrity of the remedy by restricting land, water or resource use or by

providing information that helps modify or guide human behavior at the Site.

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean a plan for implementing and maintaining Institutional Controls selected by EPA in the ROD for the Site as set forth in Section 3.8 of the SOW.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"MDNR" shall mean the Missouri Department of Natural Resources and any successor departments or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the RA for OU-1 as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

"Operable Unit 1" or "OU-1" shall mean response actions related to the Source Materials and Affected Media associated with former mining and milling operations at the Site.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parcel" shall mean those portions of the Site identified and set forth in Table 1 of the SOW subject to Remedial Action under this Consent Decree including all mine and mill wastes and/or associated metals contamination, such as transition zone soils, emanating or spilling over from these parcels onto adjacent lands.

"Parties" shall mean the United States, the State of Missouri, and the Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with OU-1 through the Effective Date of this Consent Decree, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a).

"Performance Standards" shall mean the cleanup standards and other measures of

achievement of the goals of the RA, set forth in Sections 10 and 13 of the ROD and Section 1 of the SOW.

"Plaintiffs" shall mean the United States and the State of Missouri.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Operable Unit 1 at the Site signed on September 30, 2004, by the Regional Administrator, EPA Region 7, or his/her delegate, and all attachments thereto. The OU-1 ROD is attached as Appendix A.

"Remedial Action" or "RA" shall mean those activities, except for O&M, to be undertaken by the Settling Defendants to implement the ROD upon each of their Parcels and Associated Tributaries, in accordance with the SOW and the final RD/RA Work Plan and other plans approved by EPA.

"Remedial Design/Remedial Action Work Plan" or "RD/RA Work Plan" shall mean the document developed pursuant to Paragraphs 10 and 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" or "RD" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the RA to be conducted upon their Parcels and Associated Tributaries pursuant to the RD/RA Design Work Plan.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Blue Tee Corp. and Gold Fields Mining, LLC.

"Site" shall mean the Oronogo-Duenweg Mining Belt Superfund Site, commonly known as the Jasper County Superfund Site, encompassing approximately 270 square miles, including all the Designated Areas of contamination, surface streams, and any other areas of lead and zinc mining waste contamination located in Jasper County, Missouri, and the Iron Gates Extension Designated Area in Newton County, Missouri. The entire "Site" is depicted generally on the map attached as Appendix C.

"Source Materials" shall mean mill wastes (commonly referred to as chat, fine tailings and vegetated chat), smelter wastes, and acid generating overburden.

"State" shall mean the State of Missouri.

"State Future Response Costs" shall mean all costs, including, but not limited to direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other

items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VI, VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XV, and Paragraph 84 of Section XXI. Future Response Costs shall begin to accrue from the date of entry of this Consent Decree. Notwithstanding the foregoing, State Future Response Costs shall not include costs incurred by the State that, by reason of any cost-sharing agreement between the United States and the State, are Future Response Costs of the United States.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the OU-1 ROD for RD/RA, and Operation and Maintenance at the Parcels and Associated Tributaries. The SOW is set forth in Appendix B to this Consent Decree and includes any modifications thereto made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to, directly or indirectly, sell, assign, convey, lease, mortgage, transfer, pledge, hypothecate, encumber, grant a security interest in, exchange or otherwise dispose of any interest or grant any option or warrant with respect to, or where used as a noun, a direct or indirect sale, assignment, conveyance, pledge or other disposition of any interest by any means whatsoever whether voluntary, involuntary, by operation of law or otherwise.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. §§ 9601(33); [(3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous material" under RSMo Section 260.500(5)(2000).

"Work" shall mean all activities the Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records). Responsibility for the Work is assigned to the Settling Defendants on the basis of their respective Parcels and Associated Tributaries.

## V. General Provisions

5. Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Parcels and Associated Tributaries by the Settling Defendants, to reimburse response costs of the Plaintiffs, and to resolve the OU-1 claims

RD/RA Consent Decree for
Blue Tee/Gold Fields

of Plaintiffs against the Settling Defendants as provided in this Consent Decree.

6.    <u>Commitments by Settling Defendants</u>.  The Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree.  The Settling Defendants shall also reimburse the United States and the State for Future Response Costs associated with the Work at their Parcels and Associated Tributaries as provided in this Consent Decree.

7.    <u>Compliance With Applicable Law</u>.  All activities undertaken by the Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  The Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.    <u>Permits</u>.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and as necessary for implementation of the Work).  Where any portion of the Work that is not on-site requires a federal or state permit or approval, the Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

# VI. <u>Performance of the Work By Settling Defendants</u>

9.    <u>Selection of Supervising Contractor</u>.

a.    All aspects of the Work to be performed by the Settling Defendants pursuant to Sections VI (Performance of the Work by Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Settling Defendants'

Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the MDNR. Within 10 days after the lodging of this Consent Decree, the Settling Defendants shall notify EPA and the MDNR in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be a Supervising Contractor, the Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, *Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs*, (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP). The QMP should be prepared in accordance with *EPA Requirements for Quality Management Plans (QA/R-2)* (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, the Settling Defendants propose to change a Supervising Contractor, the Settling Defendants shall give such notice to EPA and the MDNR and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the MDNR, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

   b.   If EPA disapproves a proposed Supervising Contractor, EPA will notify the Settling Defendants in writing. The Settling Defendants shall submit to EPA and the MDNR a list of contractors, including the qualifications of the contractor, that would be acceptable to it within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA, after a reasonable opportunity for review and comment by MDNR, will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. The Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the MDNR of the name of the contractor selected within 90 days of EPA's authorization to proceed.

   c.   If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, the Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure).

   10.   <u>Remedial Design</u>.

   a.   Within 30 days after EPA's issuance of an authorization to proceed pursuant to the preceding Paragraph 9, the Settling Defendants shall submit to EPA and the MDNR a work plan for the design and implementation of the RD/RA for all their Parcels and Associated Tributaries. The Settling Defendants' RD/RA Plan shall provide for design of the remedy as set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree or the SOW. Upon its approval by EPA, after a reasonable opportunity for review and comment by MDNR, the Settling Defendants' RD/RA Work Plan shall be incorporated into and become enforceable under this Consent Decree. Within 30 days after EPA's issuance of an authorization to proceed pursuant to the preceding Paragraph 9, the Settling Defendants shall submit to EPA and MDNR a Health and Safety Plan for field design and remedial action activities which conforms to the applicable

Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

        b.      The Settling Defendants' RD/RA Work Plan shall include the order for sequencing the Work at each of their Parcels and Associated Tributaries. Sequencing of Work on the Settling Defendants' Parcels and Associated Tributaries will be subject to EPA approval after a reasonable opportunity for review and comment by MDNR.

        c.      Preliminary Design Work and tasks described in the SOW on the Settling Defendants' initial Parcel and Associated Tributaries shall commence within 60 days of EPA's approval of the Settling Defendants' RD/RA Work Plan. Preliminary Design Work and tasks described in the SOW on subsequent Parcels and Associated Tributaries for the Settling Defendants shall commence no later than 90 days prior to the due date for completing the Final Inspection Report for a given Parcel and Associated Tributaries. The RPM will notify the Settling Defendants of the due date for the Final Inspection Report for each Parcel and Associated Tributaries.

        d.      The Settling Defendants' RD/RA Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to: (1) Design Criteria Report; (2) Sampling and Analysis Plan (SAP); (3) Quality Assurance Project Plan (QAPP); (4) Health and Safety Plan; (5) Performance Standard Verification Plan; (6) Construction Quality Assurance Plan; (7) Operation and Maintenance Plan; and (8) Institutional Controls Implementation Assurance Plan. The Settling Defendants shall submit to the EPA and MDNR all plans, submittals and other deliverables required under their approved RD/RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).

        e.      Upon approval of the Settling Defendants' RD/RA Work Plan by EPA, after a reasonable opportunity for review and comment by MDNR, the Settling Defendants shall implement the RD/RA Work Plan. The Settling Defendants shall submit to EPA and MDNR all plans, submittals and other deliverables required under their approved RD/RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, the Settling Defendants shall not commence further RD/RA activities at the Site prior to approval of the RD/RA Work Plan.

        f.      Within 60 days of EPA approval of the RD/RA Work Plan, the Settling Defendants shall submit the Preliminary Design Document submittal for the initial Parcel and its Associated Tributaries. Preliminary Design Documents for subsequent Parcels shall be submitted no later than 90 days prior to completing the Final Inspection Report on the previous Parcel. The Preliminary Design Document shall include, at a minimum, the following: (1) volume of tailings to be excavated and disposed of subaqueously, (2) volume and area of tailings to be consolidated and capped in-place, (3) volume of tailings to be consolidated for future sale by owner, (4) volume and area of soil exceeding remedial action levels, (5) location and capacity of voids to be used for subaqueous disposal, (6) location and description of surface water diversion structures,

RD/RA Consent Decree for
Blue Tee/Gold Fields

(7) location of overflowing shafts to be plugged and detailed plugging plans, (8) preliminary cap design, (9) design calculations and outline of design specifications, (10) access, easement and permit requirements, and (11) preliminary construction schedule. Any value engineering proposals must be identified and evaluated during this review.

g. Within 45 days after receipt of EPA's comments on the Preliminary Design Document, the Settling Defendants shall submit the Pre-final/Final Design Documents for each Parcel and its Associated Tributaries. The Pre-final/Final Design Documents shall include, at a minimum, the following: (1) final volume calculations, (2) design specifications, (3) final design drawings, (4) final Performance Standard Verification Plan; and (5) final Project Schedule. The Pre-Final/Final Design Document shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

11. Remedial Action. In addition to the design components in Paragraph 10, the RD/RA Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design documents as approved by EPA.

a. The Settling Defendants' RD/RA Work Plan shall include the following: (1) schedule for completion of the Remedial Action at their Parcels and Associated Tributaries; (2) method for selection of the remedial action contractor(s); (3) methods for satisfying permitting requirements; (4) methodology for implementation of the Operation and Maintenance Plan; (5) tentative formulation of the Remedial Action team; (6) construction quality control plan (by constructor); and, (7) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The RD/RA Work Plan also shall include a schedule for implementation of all Remedial Action tasks identified in the Final Design Document, including implementation and establishment of Institutional Controls according to the ICIAP, and shall identify the initial formulation of the Settling Defendants' Remedial Action Project Team (including, but not limited to, the Supervising Contractor).

b. Within 30 days of EPA's approval of the Settling Defendants' Final Design Document for a given Parcel and its Associated Tributaries, the Settling Defendants shall implement the RA at that Parcel and Associated Tributaries. The RA construction for a Parcel and its Associated Tributaries shall include activities and reports for (1) the Pre-Construction Inspection (which shall occur prior to initiation of the RA on a given Parcel and its Associated Tributaries); (2) the Pre-Final Inspection; (3) the Final Inspection; and, (4) the Construction Completion as specified in the SOW. The Settling Defendants shall submit to EPA and the MDNR all plans, submittals, or other deliverables required under their approved RD/RA Work Plan for each Parcel and Associate Tributaries in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, the Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of their RD/RA Work Plan.

RD/RA Consent Decree for
Blue Tee/Gold Fields

12. The Settling Defendants shall continue to implement the RA and O&M for their Parcels and Associated Tributaries until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13. <u>Modification of the SOW or Related Work Plans</u>.

a. If EPA, after consultation with MDNR, determines that modification to the Work at any Parcel or Associated Tributaries as specified in the SOW or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b. For the purposes of this Paragraph 13 and Paragraph 52 (Completion of the Work) only, the "scope of the remedy selected in the ROD" is fully described in the SOW and includes:

- Excavation and removal or consolidation for subsequent use of (1) source materials; (2) contaminated soil; and, (3) selected stream sediments exceeding Remedial Action Levels identified in Section 1 of the SOW.

- Subaqueous disposal of excavated Source Materials, contaminated soils and sediments in mine subsidence pits.

- Recontouring and revegetating excavated areas.

- Plugging of selected mine shafts and surface water diversion from mine openings.

- A monitoring program for assessing the effect of cleanup on Site streams.

- Institutional controls to regulate development in contaminated areas and the use of the disposal areas, consolidation for subsequent use areas, and capped areas.

c. If the Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution), and Paragraph 67 (administrative record review). The SOW or related work plans shall be modified in accordance with final resolution of the dispute.

d. The Settling Defendants shall implement any work required by any modifications incorporated in the SOW or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e. Nothing in this Paragraph shall be construed to limit Plaintiffs' authority to require performance of further response actions as otherwise provided in this Consent Decree.

14. The Settling Defendants acknowledge and agree that nothing in this Consent

Decree, the SOW, or the RD/RA Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15. <u>Hazardous Waste Shipments</u>.

a. The Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA and MDNR Project Coordinators of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1) The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2) The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Subparagraph 15.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, the Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. The Settling Defendants shall only send hazardous substances, pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. OU-1 Remedy Review

16. <u>Periodic Review</u>. The Settling Defendants shall conduct O&M activities as defined in the EPA-approved RD/RA Work Plan, and provide the resulting data or other information to EPA and MDNR. EPA, in consultation with MDNR, will use such information and any other available information to conduct reviews of whether the OU-1 RA for any Parcel(s) and Associated Tributaries is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

17. <u>EPA Selection of Further Response Actions</u>. If EPA determines, after consulting with MDNR, at any time, that the Remedial Action at any Parcel(s) and Associated Tributaries is not protective of human health and the environment, EPA, in consultation with MDNR, may select further response actions for any Parcel(s) and Associated Tributaries in accordance with the requirements of CERCLA and the NCP. EPA may direct the Settling Defendants to conduct the

RD/RA Consent Decree for
Blue Tee/Gold Fields

additional RA.

18.　　<u>Opportunity To Comment</u>.  The Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.　　<u>The Settling Defendants' Obligation To Perform Further Response Actions</u>.  If EPA, in consultation with MDNR, selects further response actions for Parcels and Associated Tributaries, the Settling Defendants shall undertake such further response actions at their Parcels and Associated Tributaries to the extent that the EPA determines that the RA is not protective of human health and the environment.  The Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1)  EPA's determination that the RA is not protective of human health and the environment or (2) EPA's selection of further OU-1 response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 67 (administrative record review).

20.　　<u>Submissions of Plans</u>.  If the Settling Defendants are required to perform the further response actions pursuant to the preceding Paragraph 19, they shall submit a plan for such work to EPA and MDNR for approval in accordance with the procedures set forth in Section VI (Performance of the Work by Settling Defendants) and shall implement the plan approved by EPA in accordance with the provisions of this Decree.

## VIII.　<u>Quality Assurance, Sampling, and Data Analysis</u>

21.　　The Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with *EPA Requirements for Quality Assurance Project Plans (QA/R5)* (EPA/240/B-01/003, March 2001), *Guidance for Quality Assurance Project Plans (QA/G-5)* (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to the Settling Defendants of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, the Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the MDNR, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree.  The Settling Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by the Settling Defendants in implementing this Consent Decree.  In addition, the Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA or MDNR pursuant to the QAPP for quality assurance monitoring.

RD/RA Consent Decree for
Blue Tee/Gold Fields

22.     The Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which are documented in the *Contract Lab Program (CLP) Statement of Work for Inorganic Analysis* and the *Contract Lab Program Statement of Work for Organic Analysis*, dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by MDNR, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods.  The Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program.  The Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, *Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs*, (American National Standard, January 5, 1995), and *EPA Requirements for Quality Management Plans (QA/R-2),* (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.  Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

23.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and MDNR or their authorized representatives.  The Settling Defendants shall notify EPA and MDNR not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA and MDNR shall have the right to take any additional samples that EPA or MDNR deems necessary.  Upon request, EPA and MDNR shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Work.

24.     The Settling Defendants shall submit to EPA and MDNR four (4)  copies of the results of all sampling or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site or the implementation of this Consent Decree unless EPA agrees otherwise.

25.     Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX.  Access and Institutional Controls

26.     If the Site, or any other property where access or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by the Settling Defendants, the Settling Defendants shall:

a.      commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)      Monitoring the Work;

(2)      Verifying any data or information submitted to the United States or the State;

(3)      Conducting investigations relating to contamination at or near the Site;

(4)      Obtaining samples;

(5)      Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)      Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)      Implementing the Work pursuant to the conditions set forth in Paragraph 84 (Work Takeover) of this Consent Decree;

(8)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by the Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)      Assessing the Settling Defendants' compliance with this Consent Decree; and

(10)   Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.      commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Such restrictions include, but are not limited to protecting disposal area caps, consolidation areas, and containment area caps; and,

c.      in accordance with the EPA-approved ICIAP, execute and record in the Recorder of Deeds Office of Jasper County, State of Missouri, a covenant, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 26.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 26.b of this Consent Decree, or other restrictions that EPA determines, after consulting with MDNR, are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  The Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, or (iii) other appropriate grantees; and, in the case of (ii) and (iii) above, shall include a designation of EPA (or the state as appropriate) as a "third party beneficiary" allowing EPA to maintain the right to enforce the covenant without the acquisition of an interest in real property.  The Settling

Defendants shall, in accordance with the ICIAP and the SOW schedules, submit to EPA and MDNR for review and approval, after a reasonable opportunity for review and comment by MDNR, with respect to such property:

> (1) a draft covenant that substantially conforms to §§ 260.1000-260.1039, RSMo, and

> (2) a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

> (3) Within 15 days of EPA's approval and acceptance of the covenant and the title evidence, the Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder of Deeds Office of Jasper County. Within 30 days of recording the easement, the Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

27. If the Site, or any other property where access or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than the Settling Defendants, the Settling Defendants shall use best efforts to secure from such persons:

> a. an agreement to provide access thereto for the Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to the following activities:

>> (1) Monitoring the Work;

>> (2) Verifying any data or information submitted to the United States or the State;

>> (3) Conducting investigations relating to contamination at or near the Site;

>> (4) Obtaining samples;

>> (5) Assessing the need for, planning, or implementing additional response actions at or near the Site;

>> (6) Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

>> (7) Implementing the Work pursuant to the conditions set forth in Paragraph 84 (Work Takeover) of this Consent Decree;

>> (8) Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXV (Access to Information);

RD/RA Consent Decree for
Blue Tee/Gold Fields

(9)     Assessing the Settling Defendants' compliance with this Consent Decree; and

(10)     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.     an agreement, enforceable by the Settling Defendants and the Plaintiffs, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Such restrictions include, but are not limited to protecting disposal area caps, consolidation areas, and containment area caps; and

c.     in accordance with the EPA-approved ICIAP, the execution and recordation in the Recorder of Deeds Office for Jasper County, State of Missouri, of a covenant, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions or other restrictions that EPA, after consulting with MDNR, determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  The access rights or rights to enforce land/water use restrictions shall be granted to one or more of the following persons:  (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendants and their representatives, or (iv) other appropriate grantees, and, in the case of (ii)(iii) and (iv) above, shall include a designation of EPA (or the state as appropriate) as a "third party beneficiary" allowing EPA to maintain the right to enforce the easement/covenant without the acquisition of an interest in real property.  In accordance with the ICIAP and the SOW schedules, the Settling Defendants shall submit to EPA for review and approval, after a reasonable opportunity for MDNR to review and comment, with respect to such property:

(1)     a draft covenant that is enforceable under the laws of the State of Missouri, including the Missouri Uniform Environmental Covenants Act of 2006 (MoECA) §§ 260.1000-260.1039, RSMo; and

(2)     a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the covenant to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, the Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

(3)     Within 15 days of EPA's approval and acceptance of the covenant and the title evidence, the Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the covenant shall be recorded with the Recorder of Deed's Office of Jasper County.  Within 30 days of the recording of the covenant, the Settling Defendants shall provide EPA and MDNR with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded covenant showing the clerk's recording stamps.  If covenant is to be conveyed to the United States, the covenant and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval

of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

28.     For purposes of Paragraph 27 of this Consent Decree, "best efforts" includes the incurrence of reasonable expenses in obtaining and perfecting the right of access, access covenants, easements, land/water use restrictions, restrictive covenants or an agreement to release or subordinate a prior lien or encumbrance.   If (a) any access or land/water use restriction agreements required by Paragraph 27 of this Consent Decree are not obtained within the time allowed under the SOW schedule, (b) any access covenants or restrictive covenants required by Paragraph 27.c . of this Consent Decree are not submitted to EPA and MDNR in draft form within the time allowed under the SOW schedule, or (c) the Settling Defendants are unable to obtain an agreement pursuant to Paragraph 27.c. (1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the covenant being created pursuant to this Consent Decree within the time allowed under the SOW schedule, the Settling Defendants shall promptly notify the United States and the State in writing, and shall include in that notification a summary of the steps that the Settling Defendants have taken to attempt to comply with Paragraph 27 of this Consent Decree.  The Plaintiffs may, as they deem appropriate, assist the Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of covenants running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  The Settling Defendants shall reimburse the Plaintiffs in accordance with the procedures in Section XVI (Payments of Response Costs), for all costs incurred, direct or indirect, by the Plaintiffs in obtaining such access, land/water use restrictions, or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

29.     If EPA, after consulting with MDNR, determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, the Settling Defendants shall cooperate with EPA's and MDNR's efforts to secure such governmental controls.

30.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X.  Reporting Requirements

31.     In addition to any other requirement of this Consent Decree, the Settling Defendants shall submit to EPA and MDNR two (2) copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by the Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, design documents, plans and other deliverables required by this Consent Decree completed and submitted during the previous month;

(d) describe all actions, including, but not limited to, data collection and implementation of the Work, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans, deliverables or other schedules that the Settling Defendants have proposed to EPA and the MDNR or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. The Settling Defendants shall submit these progress reports to EPA and the MDNR by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 52.d of Section XIV (Certification of Completion). If requested by EPA or the MDNR, the Settling Defendants shall also provide briefings for EPA and the MDNR to discuss the progress of the Work.

32.     The Settling Defendants shall notify EPA and the MDNR of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of the Work, no later than seven days prior to the performance of the activity.

33.     Upon the occurrence of any event during performance of the Work that the Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), the Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA and the MDNR Project Coordinators or the Alternate EPA and MDNR Project Coordinators (in the event of the unavailability of the EPA or MDNR Project Coordinators), or, in the event that neither the EPA or MDNR Project Coordinators or Alternate EPA and MDNR Project Coordinators is available, the Emergency Response Section, Region 7, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

34.     Within 20 days of the onset of such an event, the Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event, the Settling Defendants shall submit a report setting forth all actions taken in response thereto.

35.     The Settling Defendants shall submit two (2) copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. The Settling Defendants shall simultaneously submit two (2) copies of all such plans, reports and data to the MDNR. Upon request by EPA the Settling Defendants shall submit in electronic form all portions of any report or other deliverable the Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

36.     All reports and other documents submitted by the Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document the Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI.  EPA Approval of Plans and Other Submissions

37.     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the MDNR, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing the Settling Defendants at least one notice of deficiency and an opportunity to cure within thirty (30) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

38.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 37(a), (b), or (c), the Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 37(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

39.     Resubmission of Plans.

        a.      Upon receipt of a notice of disapproval pursuant to Paragraph 37(d), the Settling Defendants shall, within thirty (30) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 40 and 41.

        b.      Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 37(d), the Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve the Settling Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

40.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in

RD/RA Consent Decree for
Blue Tee/Gold Fields

accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. The Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

41.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, the Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

42.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII.  **Project Coordinators**

43.     Within 20 days of lodging this Consent Decree, the Settling Defendants, the MDNR and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

44.     Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

45.     Plaintiffs' Project Coordinator and the Settling Defendants' Project Coordinator will meet, at a minimum, on a quarterly basis.

### XIII.  Performance Guarantee

46.     In order to ensure the full and final completion of the Work, the Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $5,000,000 (hereinafter "Performance Guarantee Amount") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

       a.     A surety bond unconditionally guaranteeing payment or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

       b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

       c.     A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

       d.     A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

       e.     A demonstration by the Settling Defendants that they meet the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Performance Guarantee Amount, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

       f.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of the Settling Defendants, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with the Settling Defendants; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Performance Guarantee Amount that it proposes to guarantee hereunder.

47.     The Settling Defendants have selected, and EPA has approved, as an initial Performance Guarantee trust fund pursuant to Paragraph 45.c., in the form attached hereto as Appendix D.  Within 10 days after entry of this Consent Decree, the Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the documents

RD/RA Consent Decree for
Blue Tee/Gold Fields

attached hereto as Appendix D, and such Performance Guarantee shall thereupon be fully effective. Settling Defendants shall not submit any "Claim Certification," as defined in Appendix F, until after the estimated cost of remaining work to be performed is less than the Performance Guarantee Amount. Within 30 days of entry of this Consent Decree, the Settling Defendants shall submit all executed or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree and to the United States and EPA as specified in Section XXVI.

48.     If at any time during the effective period of this Consent Decree, the Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 46.e. or Paragraph 46.f. above, the Settling Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Performance Guarantee Amount.

49.     In the event that EPA determines at any time, including but not limited to the time of submission of the Remedial Design/Remedial Action Work Plan, which shall include a cost estimate for the remaining Work to be performed, that the Performance Guarantee provided by the Settling Defendants pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that the Settling Defendants become aware of information indicating that the Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, the Settling Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of the Settling Defendants becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 46 of this Consent Decree that satisfies all requirements set forth in this Section. In seeking approval for a revised or alternative form of Performance Guarantee, the Settling Defendants shall follow the procedures set forth in Paragraph 51.b.(ii) of this Consent Decree. The Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of the Settling Defendants to complete the Work in strict accordance with the terms hereof.

50.    The commencement of any Work Takeover pursuant to Paragraph 84 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee provided pursuant to Paragraph 46.a., b., c., d., or f., and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee, whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee, whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 46.e., the Settling Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

51.    Modification of Amount or Form of Performance Guarantee.

a.    Reduction of Amount of Performance Guarantee.  If the Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 46 above, the Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  The Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a revised or alternative form of Performance Guarantee, the Settling Defendants shall follow the procedures set forth in Paragraph 51.b.(ii) of this Consent Decree.  If EPA decides to accept such a proposal, EPA shall notify the Settling Defendants of such decision in writing.  After receiving EPA's written acceptance, the Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, the Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 49 or 51.b. of this Consent Decree.

b.    Change of Form of Performance Guarantee.

(i)    If, after entry of this Consent Decree, Settling Defendants desire to change the form or terms of any Performance Guarantee provided pursuant to this Section, the Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder.  The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 51.b.(ii) of this

Consent Decree.  Any decision made by EPA on a petition submitted under this subparagraph 51.b.(i) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by the Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(ii)     The Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  The Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree.  EPA shall notify the Settling Defendants in writing of their decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph.  Within 10 days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, the Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee shall thereupon be fully effective.  The Settling Defendants shall submit all executed or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer within 30 days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI ("Notices and Submissions") of this Consent Decree and to the United States and EPA as specified in Section XXVI.

c.     Release of Performance Guarantee.   If the Settling Defendants receive written notice from EPA in accordance with Paragraph 52 (Completion of the Work) that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies the Settling Defendants in writing, the Settling Defendants may thereafter release, cancel, or discontinue the Performance Guarantee provided pursuant to this Section.  The Settling Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph.  In the event of a dispute regarding this Subparagraph 51.c., the Settling Defendants may release, cancel, or

discontinue the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

## XIV.  Certification of Completion

52.     Completion of the Work.

a.     In accordance with the schedule described in the SOW, Section 7.0, the

Settling Defendants will sequence the Work at individual Parcels and Associated Tributaries. Within thirty (30) days of Settling Defendants' conclusion of completion of the construction at a given Parcel and its Associated Tributaries, the Settling Defendants shall schedule and conduct a pre-final inspection to be attended by the Settling Defendants, EPA and the MDNR. The pre-final inspection shall be followed by a final inspection after completion of any required corrective actions identified during the pre-final inspection. The final inspection shall be followed by a written final inspection report within 15 days of the final inspection. If, after the final inspection, the Settling Defendants still believe that the Work has been fully performed, the Settling Defendants shall submit a written report, the Parcel Construction Completion Report, signed by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree for the given Parcel and its Associated Tributaries. The report shall contain the following statement, signed by a responsible corporate official of each Settling Defendant or that Settling Defendant's Project Coordinator:

> "To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

b.      Within 90 days after the Settling Defendants conclude that all phases of the Work (including but not limited to implementation of the requirements of the ICIAP and O&M) on all Parcels and all Associated Tributaries, have been fully performed, the Settling Defendants shall submit a written report, the Final Construction Completion Report, by a registered professional engineer stating that the Work at all Parcel and all Associated Tributaries has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the certifying statement described herein subparagraph 52.a, signed by a responsible corporate official of each Settling Defendant or that Settling Defendant's Project Coordinator

c.      If, after review of any Construction Completion Report, EPA, after reasonable opportunity to review and comment by the MDNR, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify the Settling Defendants in writing of the activities that must be undertaken by the Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require the Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13.b. (Modification of the SOW or Related Work Plans)  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). The Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

d.      If EPA concludes, based on the initial or any subsequent request for

Certification of Completion by the Settling Defendants and after a reasonable opportunity for review and comment by the MDNR, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

## XV.  **Emergency Response**

53.     Emergency Response.

a.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of  Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, the Settling Defendants shall, subject to the following subparagraph 53.b., immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the Plaintiffs' Project Coordinators, or, if the Project Coordinators are unavailable, EPA's Alternate Project Coordinator.  If none of these persons are available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 7.  The Settling Defendants shall take such actions in consultation with Plaintiffs' Project Coordinators or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that the Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the MDNR take such action instead, the Settling Defendants shall reimburse EPA and the MDNR all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments of Response Costs).

b.     Nothing in the preceding subparagraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiffs).

## XVI.  **Payments of Response Costs**

54.     Payments of Response Costs.

In accordance with the Work performed at the Settling Defendants' respective Parcels and Associated Tributaries, the Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan.  EPA will exclude $250,000 of Future Response Costs payments due from Settling Defendants upon issuance of the Certification of

RD/RA Consent Decree for
Blue Tee/Gold Fields

Completion in accordance with Paragraph 52 (Completion of the Work) for Work completed in the Neck/Alba Designated Area. On a periodic basis the United States will send the Settling Defendants a bill requiring payment that includes a SCORES Report for Future Response Costs incurred at the Settling Defendants' Parcels and Associated Tributaries. The Settling Defendants shall make all payments within 30 days of the Settling Defendants' receipt of the bill requiring payment, except as otherwise provided in Paragraph 56. The Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 0736-OU#01, and DOJ Case Number 90-11-2-07280/3. The Settling Defendants shall send the check(s) to:

> US Environmental Protection Agency
> Superfund Payments
> Cincinnati Finance Center
> PO Box 979076
> St. Louis, Missouri 63197-9000

      a.      At the time of each payment, the Settling Defendants shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXVI (Notices and Submissions).

      b.      The total amounts to be paid by the Setting Defendants pursuant to this Paragraph 54. shall be deposited in the Oronogo/Duenweg Mining Belt Site or Jasper County Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

      c.      The Settling Defendants shall reimburse the State for all State Future Response Costs not inconsistent with the National Contingency Plan. The State will send the Settling Defendants a bill requiring payment that includes a State-prepared cost summary, which includes direct and indirect costs incurred by the State and its contractors on a periodic basis. The Settling Defendants shall make all payments within 30 days of the Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 55. The Settling Defendants shall make all payments to the State required by this Paragraph by certified or cashier's check payable to the "Treasurer, State of Missouri (Hazardous Waste Fund)" referencing the name and address of the party making the payment, EPA Site/Spill ID Number 0736-OU#01 and sent to:

> Chief, Superfund Section
> Hazardous Waste Program
> Missouri Department of Natural Resources
> P.O. Box 176
> Jefferson City, Missouri 65102-0176

      55.      The Settling Defendants may contest payment of any Future Response Costs under

RD/RA Consent Decree for
Blue Tee/Gold Fields

Paragraph 54 if they determine that the United States or the State has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) or the State (if the State's accounting is being disputed) pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States or the State in the manner described in Paragraph 54. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Missouri and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), and the State a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States or the State prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States or the State, if State costs are disputed, in the manner described in Paragraph 54. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States or the State, if State costs are disputed in the manner described in Paragraph 54; the Settling Defendants shall disburse any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States and the State for their Future Response Costs.

56.     In the event that the payments required by Paragraph 54 are not made within 30 days of the Settling Defendants' receipt of the bill, the Settling Defendants shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of the Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 71.

The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 54.

### XVII.  **Indemnification and Insurance**

57.     The Settling Defendants' Indemnification of the United States and the State.

a.      The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of the Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  The Settling Defendants shall indemnify, save and hold harmless the United States, the State, and their officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of the Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of the Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendants agree to pay the United States and the State all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of the Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of the Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

b.      The United States and the State shall give the Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 57.a., and shall consult with the Settling Defendants prior to settling such claim.

58.      The Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between the Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, the Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between the Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

59.      No later than 15 days before commencing any on-site Work, the Settling Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action for the Settling Defendants' final Parcel and Associated Tributaries pursuant to Subparagraph 52.b of Section XIV (Certification of Completion) comprehensive general liability insurance with limits of three million dollars, combined single limit, and automobile liability insurance with limits of three million dollars, combined single limit, naming the United States and the State as additional insureds.  In addition, for the duration of this Consent Decree, the Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of the Settling Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent

Decree, the Settling Defendants shall provide to EPA and the MDNR certificates of such insurance and a copy of each insurance policy. The Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If the Settling Defendants demonstrate by evidence satisfactory to EPA and the MDNR that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, the Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII. **Force Majeure**

60. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by the Settling Defendants, or of the Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

61. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendants shall notify orally EPA's and MDNR's Project Coordinator or, in their absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Waste Management Division, EPA Region 7, within 48 hours of when the Settling Defendants first knew that the event might cause a delay. Within 7 days thereafter, the Settling Defendants shall provide in writing to EPA and the MDNR an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The Settling Defendants shall be deemed to know of any circumstance of which the Settling Defendants, any entity controlled by the Settling Defendants, or the Settling Defendants' contractor knew or should have known.

62. If EPA, after a reasonable opportunity for review and comment by the MDNR, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for

performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the MDNR, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the MDNR, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the MDNR, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

63.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, the Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Settling Defendants complied with the requirements of Paragraphs 61 and 62, above. If the Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by the Settling Defendants of the affected obligation of this Consent Decree identified to EPA, the MDNR and the Court.

## XIX.  Dispute Resolution

64.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States and the State to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

65.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

66.     Statements of Position.

        a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within seven (7) days after the conclusion of the informal negotiation period, the Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and the State a written Statement of Position on the matter in dispute,

including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 67 or Paragraph 68.

b. Within seven (7) days after receipt of the Settling Defendants' Statement of Position, EPA will serve on the Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 67 or 68. Within seven (7) days after receipt of EPA's Statement of Position, the Settling Defendants may submit a Reply.

c. If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 67 or 68, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 67 and 68.

67. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by the Settling Defendants regarding the validity of the ROD's provisions.

a. An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b. The Director of the Superfund Division, EPA Region 7, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 67.a. This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraph 67.c. and d.

c. Any administrative decision made by EPA pursuant to Paragraph 67.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a

response to the Settling Defendants' motion.

   d. In proceedings on any dispute governed by this Paragraph, the Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 67.a.

  68. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action, nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

   a. Following receipt of the Settling Defendants' Statement of Position submitted pursuant to Paragraph 66, the Director of the Superfund Division, EPA Region 7, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 10 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

   b. Notwithstanding Paragraph M of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

  69. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 74. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. Stipulated Penalties

  70. The Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 71-72 to the United States and the State with sixty (60) percent of any stipulated penalty collected payable to the United States and remaining forty (40) percent payable to the State, for the Settling Defendants' failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by the Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other

RD/RA Consent Decree for
Blue Tee/Gold Fields

documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

   71.    Stipulated Penalty Amounts - Work and Payments.

          a.     The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 71.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $3,000 | 31st day and beyond |

          b.     Compliance Milestones.

          (1)    Submission of the Remedial Design/Remedial Action Work Plan;
          (2)    Failure to initiate Remedial Design/Remedial Action Work Plan;
          (3)    Failure to meet schedules established by EPA-approved Work Plans; and,
          (4)    Failure to pay billed Future Response Costs or State Future Response Costs.

   72.    Stipulated Penalty Amounts – Other deliverables or violations.

          a.     The following stipulated penalties shall accrue per violation per day for any violation of this Consent Decree, the SOW, approved work plans other than those identified in Paragraph 71.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

   73.    In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 84 of Section XXI (Covenants Not to Sue by Plaintiffs), the Settling Defendants shall be liable for a stipulated penalty in the amount of $200,000.

   74.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies the Settling Defendants of any

RD/RA Consent Decree for
Blue Tee/Gold Fields

deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region 7, under Paragraph 67.b. or 68.a. of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that the Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

75.    Following EPA's determination that the Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA may give the Settling Defendants written notification of the same and describe the noncompliance. EPA may send the Settling Defendants a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Settling Defendants of a violation.

76.    All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of the Settling Defendants' receipt from EPA of a demand for payment of the penalties, unless the Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substances Superfund," shall be mailed to:

> US Environmental Protection Agency
> Superfund Payments
> Cincinnati Finance Center
> PO Box 979076
> St. Louis, Missouri 63197-9000

shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #0736 – OU#01, the DOJ Case Number 90-11-2-07280/3, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the United States as provided in Section XXVI (Notices and Submissions). Where a State is entitled to a portion of the stipulated penalties, payment to the State shall be paid by certified check or cashier's check(s) made payable to the "Treasurer, State of Missouri (Jasper County School Fund), shall be mailed to:

> JoAnn Horvath, or designee
> Financial Services
> Missouri Attorney General's Office
> P.O. Box 899
> Jefferson City, Missouri 65102

RD/RA Consent Decree for
Blue Tee/Gold Fields

shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #0736-97#01, and the name and address of the party making payment. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the State as provided in Section XXVI (Notices and Submissions).

77.     The payment of penalties shall not alter in any way the Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

78.     Penalties shall continue to accrue as provided in Paragraph 74 during any dispute resolution period, but need not be paid until the following:

        a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA and the MDNR within 15 days of the agreement or the receipt of EPA's decision or order;

        b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, the Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA and the MDNR within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

        c.     If the District Court's decision is appealed by any Party, the Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States or the State into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and the MDNR or to Settling Defendants to the extent that they prevail.

79.     If the Settling Defendants fail to pay stipulated penalties when due, the United States or the State may institute proceedings to collect the penalties, as well as interest. The Settling Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 84.

80.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of the Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties

pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

81.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties owed to it that have accrued pursuant to this Consent Decree, and the State may, in its unreviewable discretion, waive any

portion of stipulated penalties that are owed to it.

## XXI.  Covenants Not to Sue by Plaintiffs

82.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraph 83 of this Section, the United States and the State covenant not to sue or to take administrative action against the Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work at OU-1 and for recovery of Past Response Costs, Future Response Costs and Future Oronogo/Duenweg Tributary Costs associated with OU-1.  These covenants not to sue shall take effect upon the receipt by EPA and the MDNR of the payments required by Paragraph 54 of Section XVI (Payments for Response Costs).  These covenants not to sue are conditioned upon the satisfactory performance by the Settling Defendants of their obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendants and do not extend to any other person.

83.     <u>General reservations of rights</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against the Settling Defendants with respect to all matters not expressly included within Plaintiffs' covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the Settling Defendants with respect to:

a.     claims based on a failure by the Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of OU-1 of the Site;

c.     liability based upon the Settling Defendants' ownership or operation of the Site, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendants;

d.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.     criminal liability;

f.     liability for violations of federal or state law which occur during or after implementation of the Remedial Action;

g.     liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work

Plans); and

        h.     liability for the final response action.

84.    <u>Work Takeover</u>. In the event EPA determines that the Settling Defendants have ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in their performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. The Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 67, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that the Settling Defendants shall pay pursuant to Section XVI (Payment for Response Costs).

85.    Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII. **Covenants by Settling Defendants**

86.    <u>Covenant Not to Sue</u>. Subject to the reservations in Paragraph 87, the Settling Defendants hereby covenant not to sue and agrees not to assert any claims or causes of action against the United States and the State with respect to the Work, past response actions, Past Response Costs, Future Response Costs and Future Oronogo/Duenweg Tributary Costs as defined herein, or this Consent Decree, including, but not limited to:

        a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

        b.     any claims against the United States or the State, including any department, agency or instrumentality of the United States or the State under CERCLA Sections 107 or 113 related to the Site; or

        c.     any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at state or common law.

87.    Except as provided in Paragraph 90 (Waiver of Claims Against De Micromis Parties) and Paragraph 95 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States or the State brings a cause of action or issues an order pursuant to the general reservations set forth in Paragraph 83 (a) - (h), but only to the extent that the Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or the State are seeking pursuant to the applicable reservation.

88.     The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

89.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

90.     The Settling Defendants agree not to assert any claims and to waive all claims or causes of action that it may have for all matters relating to the OU-1 at the Site, including for contribution, against any person where the person's liability to the Settling Defendants with respect to OU-1 at the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if:

        a.      the materials contributed by such person to the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

        b.      this waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that the Settling Defendants may have against any person if such person asserts a claim or cause of action relating to the Site against the Settling Defendants.

## XXIII.  Effect of Settlement - Contribution Protection

91.     Except as provided in Paragraph 90 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent

Decree may have under applicable law. Except as provided in Paragraph 90 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

92. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree. Matters addressed shall include Future Response Costs and Future Oronogo/Duenweg Tributary Costs associated with OU-1 as defined herein and all Work performed under the Consent Decree.

93. The Settling Defendants agree that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree they will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

94. The Settling Defendant also agree that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify in writing the United States and the State within 10 days of service of the complaint on it. In addition, the Settling Defendants shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

95. In any subsequent administrative or judicial proceeding initiated by the United States and the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, the Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States and the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV. **Access to Information**

96. The Settling Defendants shall provide to EPA and the MDNR, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. The Settling Defendants shall also make available to EPA and the MDNR, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

97. <u>Business Confidential and Privileged Documents</u>.

a. The Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the MDNR, or if EPA has notified the Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to the Settling Defendants.

b. Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to MDNR under this Consent Decree to the extent permitted by and in accordance with § 260.430, RSMo. All such submissions shall be handled in accordance with the provisions specified in 10 CSR 25-8. Documents or information determined to be confidential by MDNR will be afforded the protection specified in § 260.430, RSMo . If no claim of confidentiality accompanies documents or information when they are submitted to MDNR or if MDNR had notified Settling Defendants that the documents or information are not confidential under the standards of § 260.430, RSMo, the public may be given access to such documents or information without further notice to Settling Defendants.

c. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by the Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

98. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. **Retention of Records**

99. Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 52 of Section XIV (Certification of Completion of the Work) for the final Parcel and Associated Tributaries, the Settling Defendants shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in their

possession or control or which come into their possession or control that relate in any manner to their liability under CERCLA with respect to the Site, provided, however, that to the extent that Settling Defendants are potentially liable as an owner or operator at the Site, they must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site. The Settling Defendants must also retain, and instruct their contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that the Settling Defendants (and their contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

100. At the conclusion of this document retention period, the Settling Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, the Settling Defendants shall deliver any such records or documents to EPA or the MDNR. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendants assert such a privilege, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by the Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

101. The Settling Defendants hereby certify that, to the best of their knowledge and belief, after thorough inquiry, they has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to their potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that they have fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

## XXVI. Notices and Submissions

102. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions

shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and the Settling Defendants, respectively.

As to the United States:    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice
    P.O. Box 7611
    Washington, D.C. 20044-7611
    Re: DJ # 90-11-2-06280/3

As to EPA:    Cecilia Tapia
    Director, Superfund Division
    United States Environmental Protection Agency
    Region 7
    901 North Fifth Street
    Kansas City, KS 66101

    Mark Doolan
    EPA Project Coordinator
    United States Environmental Protection Agency
    Region 7
    901 North Fifth Street
    Kansas City, KS 66101

    Regional Financial Manager
    United States Environmental Protection Agency
    Region 7
    901 North Fifth Street
    Kansas City, KS 66101

As to the State:    Shelley A. Woods, Assistant Attorney General
    P.O. Box 899
    Jefferson City, Missouri 65102-0899

    Don Van Dyke
    MDNR Project Coordinator

RD/RA Consent Decree for
Blue Tee/Gold Fields

Missouri Department of Natural Resources
1730 East Elm Street
P.O. Box 176
Jefferson City, Missouri 65102-0176

<u>As to the Settling Defendants</u>:

Terrance Gileo Faye, Esq.
Babst Calland Clements & Zomnir, P.C.
1 N. Maple Avenue
Greensburg, PA 15601

## XXVII.  **Effective Date**

103.    The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII.  **Retention of Jurisdiction**

104.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXIX.  **Appendices**

105.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.
"Appendix B" is the SOW.
"Appendix C" is the description or map of the Site.
"Appendix D" is the Trust Fund.

RD/RA Consent Decree for
Blue Tee/Gold Fields

### XXX.  Community Relations

106.    The Settling Defendants shall propose to EPA and the MDNR their participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendants under the Plan.  The Settling Defendants shall also cooperate with EPA and the MDNR in providing information regarding the Work to the public.  As requested by EPA or the MDNR, the Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the MDNR to explain activities at or relating to the Site.

### XXXI.  Modification

107.    Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendants.  All such modifications shall be made in writing.

108.    Except as provided in Paragraph 13 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, the State, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the MDNR with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendants.

109.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

### XXXII.  Lodging and Opportunity for Public Comment

110.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

111.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between or among the Parties.

RD/RA Consent Decree for
Blue Tee/Gold Fields

## XXXIII.  **Signatories/Service**

112.    The undersigned representative of the Settling Defendants to this Consent Decree, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the Assistant Attorney General, Missouri Attorney General's Office, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

113.    The Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

114.    The Settling Defendants shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. The Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The Parties agree that the Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIV.  **Final Judgment**

115.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

116.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 26th DAY OF MARCH, 2008.


s/ Gary A. Fenner_____
United States District Judge

[The original signatures of the following individuals are contained in the Notice of Lodging of Consent Decree (Doc. #2), filed November 10, 2008, in Case No. 08-5114-CV-SW-GAF.]

FOR THE UNITED STATES OF AMERICA:


_____          _____
Date                Ronald J. Tenpas
                    Assistant Attorney General
                    Environment and Natural Resources Division
                    U.S. Department of Justice
                    Washington, D.C.  20530


_____          _____
Date                Elizabeth Loeb
                    Trial Attorney
                    Environmental Enforcement Section
                    Environment and Natural Resources Division
                    U.S. Department of Justice
                    P.O. Box 7611
                    Washington, D.C.  20044-7611

RD/RA Consent Decree for
Blue Tee/Gold Fields

**THE UNDERSIGNED PARTY enters into this Consent Decree in US District Court for the Western District of Missouri, United States v. Blue Tee Corp. and Gold Fields Mining, LLC, Civil Action No. <u>08-5114-CV-SW-GAF</u>.**

                                      **FOR THE UNITED STATES OF AMERICA:**

_____               _____
Date

                                  Charles M. Thomas
                                  Assistant United States Attorney
                                  Western District of Missouri
                                  U.S. Department of Justice
                                  Charles Evans Whittaker Courthouse
                                  400 East Ninth Street, Room 5510
                                  Kansas City, Missouri 64106
                                  Telephone: (816) 426-3130

                      FOR THE US ENVIRONMENTAL PROTECTION AGENCY:

_____               _____
Date

                                  Cecilia Tapia
                                  Director, Superfund Division
                                  Region 7
                                  U.S. Environmental Protection Agency
                                  901 N. 5th Street
                                  Kansas City, KS  66101

_____               _____
Date

                                  E. Jane Kloeckner
                                  Assistant Regional Counsel
                                  U.S. Environmental Protection AgencyRegion 7
                                  901 N. 5th Street
                                  Kansas City, KS  66101

RD/RA Consent Decree for
Blue Tee/Gold Fields

**THE UNDERSIGNED PARTY enters into this Consent Decree in US District Court for the Western District of Missouri, United States v. Blue Tee Corp. and Gold Fields Mining, LLC, Civil Action No. <u>08-5114-CV-SW-GAF</u>.**

**FOR THE STATE OF MISSOURI**:

_____
Date

_____
Jeremiah W. (Jay) Nixon, Attorney General

_____
Date

_____
Shelley A. Woods, Assistant Attorney General
P.O. Box 899
Jefferson City, Missouri 65102-0899

_____
Date

_____
Doyle Childers, Director
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, Missouri 65102-0176

RD/RA Consent Decree for
Blue Tee/Gold Fields

**THE UNDERSIGNED PARTY enters into this Consent Decree in US District Court for the Western District of Missouri, United States v. Blue Tee Corp. and Gold Fields Mining, LLC, Civil Action No. 08-5114-CV-SW-GAF.**

**FOR**

| | |
|---|---|
| _____ | Signature: _____ |
| Date | Name (print): _____ |
| | Title: _____ |
| | Address: _____ |
| | _____ |
| | _____ |
| | Ph. No. _____ |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____
Title: _____
Address: _____
_____
_____
Ph. No. _____

RD/RA Consent Decree for
Blue Tee/Gold Fields